UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PENDLETON WOOLEN MILLS, INC., an
Oregon corporation,

                        Plaintiff,

     v.

THE ROUND UP ASSOCIATION, an
Oregon corporation,

                      Defendant.

_____

Case No.: 3:11-CV-592-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Pendleton Woolen Mills (the "Mill") seeks to enjoin defendant The Round Up

Association (the "Association") from using the trademark "PENDLETON" in connection with the

Association's goods and services; a declaration that the Association has no right to register the

"PENDLETON ROUND-UP" mark for use on goods similar or related to those offered by the Mill;

and damages resulting from the Association's allegedly unlawful use of the "PENDLETON" mark.

Page 1 - OPINION AND ORDER                                         *{SIB}*

The Mill asserts claims for federal and common law trademark infringement and unfair competition, federal and state trademark dilution, and state unfair and deceptive trade practices, as well as a claim for declaratory judgment regarding registration of the "PENDLETON ROUND-UP" mark. Presently before the court is the Association's motion to dismiss the Mill's federal and state trademark dilution claims, and state unfair and deceptive trade practices claim under FED. R. CIV. P. 12(b)(6) for failure to state a claim.

The court finds the Mill has failed to allege factual support for its dilution by tarnishment claim or for standing under Oregon's Unlawful Trade Practices Act (OR. REV. STAT. 646.605-646.656)(the "Act"). Therefore, the court grants the Association's motion to dismiss the Mill's Third Claim for Relief for federal trademark dilution to the extent it is based on tarnishment rather than blurring, and the Mill's Sixth Claim for Relief for violation of the Act. The Association's motion to dismiss the Mill's Third Claim for Relief for federal trademark dilution based on blurring or Fourth Claim for Relief for state trademark dilution is denied.

*Background*

The Mill alleges it owns numerous federal registrations for the trademark "PENDLETON." (Compl. ¶ 9.) Attached as exhibits to the First Amended Complaint filed by the Mill on June 22, 2011 ("Complaint"), are federal registrations issued by the United States Patent and Trademark Office for the use of the trademark "PENDLETON" with regard to distilled spirits, wine, furniture, dinnerware, footware, barbeque sauce, bags, blankets, retail services, including catalogue and online, jewelry and watches, men's and women's wear, and piece goods. (Compl. Ex.'s 1-13.) The Mill alleges it also owns the federal registrations for various phrases containing the "PENDLETON" mark, such as "PENDLETON ORIGINALS", "COUNTRY CLOTHES BY PENDLETON", and

"NOR'WESTER WEAR BY PENDLETON".  (Compl. ¶ 9.)  The "PENDLETON" mark in all of the versions registered by the Mill are collectively referred to as the "PENDLETON Mark".

The Mill has used the PENDLETON Mark on blankets and throws since 1895, on apparel since 1912, and in connection with scented lotions, soaps, and other bath products since at least 2006.  (Compl. ¶¶ 10, 11.)  The Mill asserts that as a result of its promotion and sale of products under the PENDLETON Mark, the PENDLETON Mark has gained significant recognition and goodwill among the purchasing public and acquired distinctiveness with regard to the products and services sold under the PENDLETON Mark.  (Compl. ¶¶ 12, 13.)

Since at least 1997, the Association has used the PENDLETON Mark pursuant to a license agreement with the Mill.  (Compl. ¶ 14.)  Specifically, the license agreement allowed the Association to use the phrase "PENDLETON ROUND-UP" on apparel sold on the grounds of the Pendleton Round-Up Rodeo, an annual event sponsored by the Association, and in stores located in Pendleton, Oregon, as approved by the Mill.  (Compl. ¶ 16.)  The Mill revoked and terminated the license agreement on May 16, 2011.  (Compl. ¶¶ 17, 18.)  However, the Association continues to use the phrase "PENDLETON ROUND-UP" to sell apparel and related goods, including fragrances.  (Compl. ¶¶ 19, 20.)

The Mill alleges the Association's use of phrase "PENDLETON ROUND-UP," which it describes as "nearly identical and confusingly similar to the PENDLETON Mark", infringes on the PENDLETON Mark.  (Compl. ¶¶ 21, 22.)  The Mill asserts the Association's activities "are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of [the Association] with [the Mill], and as to the origin, sponsorship, or approval of [the Association's] goods or commercial activities" and that such confusion is "inflicting irreparable harm to the

goodwill symbolized by the PENDLETON Marks." (Compl. ¶¶ 23-24.)

*Preliminary Procedural Matter*

The Association offers as an exhibit to its motion to dismiss a photocopy of the packaging for a bottle of cologne. The packaging depicts the silhouette of a cowboy riding a bucking horse located over the phrases "LETER BUCK" and "PENDLETON ROUND-UP" with the word "BUCK" in the largest font, the words "ROUND-UP" and "LETER" in smaller fonts, and the word "PENDLETON" in the smallest font.[1] (Def.'s Mot. to Dismiss Ex. B.) The bottle of cologne has the same cowboy silhouette on the bottle and the phrase "LETER BUCK" on the metallic base. (Def.'s Mot. to Dismiss Ex. B.) The Association relies on the photocopy as evidence that the "goods bearing the PENDLETON ROUND-UP mark are completely dissimilar to the goods bearing the PENDLETON mark." (Def.'s Mot. to Dismiss at 8.)

The Association acknowledges in a footnote that in the context of a motion to dismiss, the court is limited to consideration of the allegations in the complaint and any exhibits attached thereto, and offers to voluntarily strike the exhibit if the Mill contests the authenticity of the photocopy or the court deems the photocopy inappropriate in the context of a motion to dismiss. However, the Association argues that the Mill refers to products bearing the phrase "PENDLETON ROUND-UP" in the Complaint and, therefore, consideration of a photocopy of one of those products is appropriate. The Mill contests the authenticity of the photocopy, noting that no information is provided as to when or where the marketing/packaging identified in the photocopy was used. The Mill also argues that the photocopy depicts only one of the Association's many variations of the use of the phrase

---

[1]Additional words appear in even smaller fonts and are not legible from the photocopy offered as an exhibit.

"PENDLETON ROUND-UP" and is, therefore, not appropriate for consideration.

The Association is offering materials outside of the complaint to support its motion to dismiss. In general, material outside the pleadings may not be considered in ruling on a motion to dismiss unless the motion is treated as one for summary judgment and the parties are "given reasonable opportunity to present all materials made pertinent to such motion by Rule 56." *Jacobson v. AEG Captial Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). There are two exceptions to this rule. First, a court may consider "material which is properly submitted to the court as part of the complaint." *Lee v. County of Los Angeles*, 240 F.3d 754, 774 (9th Cir. 2001). A document is not "outside" the complaint if the complaint specifically refers to the document, its authenticity is not questioned, and the plaintiff's complaint necessarily relies on it. *Id*. at 774. When the plaintiff fails to introduce a pertinent document as part of his pleading, the defendant may introduce the exhibit as part of his motion attacking the pleading. *Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1998). The second exception is that under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of "matters of public record." *Lee*, 240 F.3d at 774. Facts contained in public records are considered appropriate subjects for judicial notice. *Santa Monica Food not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006).

The Mill alleges the Association is using the phrase "PENDLETON ROUND-UP" to sell apparel and related goods and that the Association has allowed the manufacturer or distributor of fragrance products to use and apply to register the mark "PENDLETON FRAGRANCES" for use on fragrance products. These allegations do not specifically refer to the "Leter Buck" cologne depicted in the photocopy offered as an exhibit. Accordingly, the photocopy was not incorporated into the Complaint. Additionally, the Mill questions the authenticity of the photocopy. Finally, the

photocopy is not a matter of "public record" and does not qualify for judicial notice.

The court therefore strikes the document rather than convert the motion to dismiss to a motion for summary judgment. Even if the court were to consider the photocopy, it would not establish that the goods bearing the phrase "PENDLETON ROUND-UP" are completely dissimilar to the goods bearing the PENDLETON Mark. The Mill alleges that the Association is using the PENDLETON Mark to sell apparel and related goods. The photocopy is merely one example of a product sold by the Association under the phrase "PENDLETON ROUND-UP" and is not conclusive evidence that none of the Association's products feature marks that are sufficiently similar to the PENDLETON Mark to constitute infringement or dilution. Accordingly, the court strikes and will not consider the photocopy of the Leter Buck cologne offered as an exhibit by the Association in support of its motion to dismiss.

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to

dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)(quoting *Iqbal*, 129 S. Ct. at 1949).

*Discussion*

I.  Third Claim for Relief – Federal Trademark Dilution under 15 U.S.C. § 1125(c)

The federal anti-dilution statute, found at 15 U.S.C. § 1125(c), provides an action for owners of famous and distinctive marks or trade names against another who uses the famous mark or trade name in a manner likely to cause dilution by blurring or tarnishing the famous mark.  The purpose of the statute is to prevent "unauthorized users of famous marks from 'attempt[ing] to trade upon the good-will and established renown of such marks,' regardless of whether such use causes a likelihood of confusion about the product's origin." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 910 (9th Cir. 2002)(quoting H.R. Rep No. 104-374, at 3 (1995) *reprinted in* 1995 U.S.C.C.A.N 1029, 1030).   The elements of a dilution by blurring claim include ownership of a famous trademark or trade name that is distinctive, either inherently or through acquired distinctiveness, and use of a similar mark by another in commerce that began after the famous mark became famous and is likely to impair the distinctiveness of the famous mark. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1161, 1172 (9th Cir. 2011); *Fuel Clothing Co., Inc. v. Safari Shirt Co.*, CV05-1220-HU, 2006 WL 3751237, at *5 (D. Or. Dec. 18, 2006).

The statute provides that "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A)(2011).  In determining whether a mark is "famous," the court may consider all relevant factors, including the extent and reach of advertising or publicity of

the mark, the amount of sales of goods or services offered under the mark, the degree of actual recognition of the mark, and the registration status of the mark. *Id.* "Dilution by blurring" is defined as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B)(2011). The statute identifies six factors which the court may consider, along with other relevant factors, in determining whether a mark is likely to be diluted by blurring. These factors include the degree of similarity between the marks, the distinctiveness of the famous mark, the extent of the owner's exclusive use of the mark, the degree of recognition of the mark, the intent of the user of the similar mark, and evidence of actual dilution of the famous mark by association. *Id.* Finally, a famous mark is considered diluted by tarnishment when the reputation of the famous mark is harmed by the association resulting from the use of the similar mark. 15 U.S.C. § 1125(c)(2)(C)(2011).

In support of the dilution claim, the Mill alleges that: (1) it owns the rights to the PENDLETON Mark; (2) as a result of the Mill's marketing efforts, the PENDLETON Mark has acquired distinctiveness and become famous and well-known symbols of the Mill's goods and services; and (3) the Association's commercial use of the PENDLETON Mark, which began after the PENDLETON Mark acquired its fame, is diluting, or is likely to dilute, the distinctiveness of the PENDLETON Marks "by eroding the public's exclusive identification of these famous marks with [the Mill], tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish goods and services." (Compl. ¶ 40.) The Mill further alleges that the Association intentionally, willfully, and maliciously intended to trade on the Mill's goodwill and reputation by using the PENDLETON Mark on its products and that it has been damaged by such actions.

A.  *Famous Mark*

To be entitled to protection under the federal anti-dilution statute, a plaintiff must show that its mark is famous.  *Thane*, 305 F.3d at 905.  The Association argues that the allegations of the Complaint do not establish that the PENDLETON Mark is sufficiently famous to support a claim for trademark dilution.  The Association asserts the Mill's reliance on the numerous registrations of variations of the PENDLETON Mark, while one factor to be considered in determining whether a mark is famous under anti-dilution statute, is not sufficient to establish the famousness required by the statute.  However, the Mill clearly alleges in the Complaint that it has used the PENDLETON Mark for more than a century and has promoted and sold a large variety of products and services under the PENDLETON Mark, resulting in the creation of "significant recognition and goodwill among the purchasing public."  (Compl. ¶ 12.)  These allegations speak to two of the three other factors to be considered in determining whether a mark is famous under the anti-dilution statute:  the extent and reach of advertising or publicity of the mark, and the amount of sales of goods and services offered under the mark.  While the allegations may not provide the detail desired by the Association, they do, when viewed as true and in a light most favorable to the Mill, provide factual content sufficient to allege a plausible claim for relief based on the famousness of the PENDLETON Mark.  Accordingly, the court finds that the Mill has adequately alleged that the PENDLETON Mark is sufficiently famous to support a claim under the anti-dilution statute.

B.  *Dilution by Blurring*

The Association argues that because the Mill has failed to plead facts supporting each of the factors identified in the dilution by blurring statute, the Mill has failed to state a claim for trademark dilution by blurring under 15 U.S.C. § 1125(c)(2)(B).  Primarily, the Association contends that the

allegations of the Complaint do not establish that the PENDLETON Mark is adequately distinctive or is sufficiently similar to the phrase "PENDLETON ROUND-UP".

First, the court notes that the statute identifies the listed factors as merely some, but not all, of the relevant factors to be considered by the court in determining whether dilution by blurring has occurred.  Accordingly, the Mill is not required to allege facts to support each of the factors to state a *prima facie* claim under the statute and the Mill's asserted failure to do so is not fatal to its claim. Second, as discussed below, the allegations that the Association is using a distinctive mark, and that this use is diluting the goodwill associated with that mark, are reasonably supported by the factual allegations of the Complaint when deemed true and viewed in a light most favorable to the Mill.

To support a dilution claim, the alleged diluter's mark must be identical, nearly identical, or substantially similar to the protected mark.  *adidas-American, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1061 (D. Or. 2008).  The Association argues the addition of the term "Round-Up" to the PENDLETON Mark and the fact that the Association's apparel and related goods are sold only in the context of the Pendleton Round-Up Rodeo distinguish the two marks sufficiently to avoid confusion.  First, the Complaint makes it clear the Mill is not relying solely on the single-word trademark of "PENDLETON".  The Mill asserts it also owns marks that incorporate "PENDLETON"  with other words or phrases and that the Association is infringing on these resulting marks as well.  The fact that "PENDLETON ROUND-UP" includes more than just "PENDLETON" does not make "PENDLETON ROUND-UP" dissimilar to the other marks registered by the Mill, such as "PENDLETON ORIGINALS" or "COUNTRY CLOTHES BY PENDLETON".  Second, the Complaint does not contain allegations regarding where or how the Association is marketing or selling the apparel and related products.  The Complaint alleges only that

the Association is selling goods bearing marks similar to the PENDLETON Mark.  It is not appropriate for the court to consider factual information not alleged in the Complaint in considering a motion to dismiss.  The court finds that the Mill has adequately alleged that the phrase used by the Association is similar to the PENDLETON Mark owned by the Mill.

The Association also argues that the "PENDLETON" mark is not inherently distinctive and is, therefore, not entitled to protection under a dilution theory.  However, the Association overlooks the specific language of the statute which provides protection for famous marks that are "distinctive, inherently or through acquired distinctiveness".  15 U.S.C. § 1125(c)(2)(A).  Judge King of this court recently acknowledged the current version of the anti-dilution statute specifically allows that "non-inherently distinctive marks may qualify for protection." *Id*. at 1061 n.11.

Trade marks or trade names fall into one of five categories: (1) fanciful; (2) arbitrary; (3) suggestive; (4) descriptive; (5) generic.  *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006).  The first three categories describe marks that do not clearly identify or describe the product or service, but require imagination or deductive reason to uncover the relationship between the mark and the product or service, or are arbitrary and totally unconnected to the product or service. *AMF Inc. v Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979); *Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1129 nn.4-6 (C.D. Cal. 2001).  "Suggestive, arbitrary, and fanciful marks are 'deemed inherently distinctive and are automatically entitled to protection because they naturally serve to identify a particular source of a product.'"  *adidas-American*, 466 F.3d at 760 (quoting *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005)).  At the other end of the spectrum are generic marks, which are made up of the common name of the product or service.  Generic marks are not protected because they simply identify the product or

service and do not provide information on the source of the product or service. *adidas-American*, 466 F.3d at 760. Descriptive marks, which "define a particular characteristic of the product in a way that does not require any exercise of the imagination" fall somewhere in the middle and are not considered inherently distinctive. *Id.* (citation omitted); *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993). "A descriptive mark can receive trademark protection if it has acquired distinctiveness by establishing 'secondary meaning' in the marketplace." *adidas-American*, 466 F.3d at 760 (citation omitted). "Secondary meaning" is a term used to indicate that a trademark or name has, through use, become uniquely associated with the specific source of a product or service. *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992)). A party relying on "secondary meaning" must present evidence establishing that, in the minds of the public, the trademark or trade name identifies the source of the product or service – the party who manufactures the product or provides the service – and is not merely descriptive of the product or service itself. *adidas-American*, 466 F.3d at 760.

The PENDLETON Mark is not generic. It does not describe the products manufactured and sold by the Mill. A determination of whether the PENDLETON Mark is descriptive, suggestive, arbitrary, or fanciful need not be made at this juncture because all of these marks are entitled to protection. Even assuming the PENDLETON Mark is descriptive and must be supported with evidence of acquired distinctiveness through secondary meaning, the Mill alleges it has used the PENDLETON Mark since 1895; it has promoted and sold numerous products under the PENDLETON Mark creating significant recognition and goodwill among the purchasing public; and the PENDLETON Mark has "acquired distinctiveness with respect to the products and services sold under them." (Compl. ¶¶ 10-13). These allegations provide sufficient factual support for the

requirement that a trademark be distinctive to be entitled to protection from dilution by blurring.

With regard to the remaining four factors – degree of recognition of the mark, evidence of actual dilution of the mark, extent of the owner's exclusive use of the mark, and the intent of the user of the mark, the court finds the Mill has sufficiently alleged factual support for these factors as well. The allegations relating to distinctiveness also provide factual support for the factor requiring a high degree of recognition. The dilution by blurring statute protects a trademark or name that is "likely" to be diluted by use of a similar mark. As conceded by the Association, this language eliminates any requirement that the Mill show actual dilution as a prerequisite to their dilution claim. The allegations that the Mill has registered the PENDLETON Mark, and numerous variations thereon, and has entered into license agreements allowing others to use the PENDLETON Mark under limited circumstances, provide factual support of the extent to which the Mill has made exclusive use of the PENDLETON Mark. Finally, with regard to the intent of the Association in using the PENDLETON Mark, the allegations that the Association had previously used the PENDELTON Mark only under a licensing agreement with the Mill speaks to at least the Association's knowledge of the Mill's claims on the PENDLETON Mark prior to using the phrase "PENDLETON ROUND-UP" on its products.

The Mill has stated a *prima facie* claim for dilution by blurring under the federal anti-dilution statute. Additionally, although not required to, the Mill has alleged factual support for each of the factors identified as relevant factors to be considered by a court in determining whether dilution by blurring is likely to occur with the exception of actual association, which the Association concedes is not required . The Association's motion to dismiss the Mill's dilution by blurring claim is denied.

### C.  Dilution by Tarnishment

Dilution by tarnishment occurs when use of a similar mark harms the reputation of the famous mark entitled to protection.  15 U.S.C. § 1125(c)(2)(C).  To properly support a dilution by tarnishment claim, a plaintiff must establish that the famous mark will suffer negative associations as a result of the use of the similar mark.  *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 608 (9th Cir. 2000).  "Tarnishment" is present "when a famous mark is improperly associated with an inferior or offensive product or service."  *Playboy Enters., Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002)(quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1326 n.7 (9th Cir. 1998)).  Or, as stated by the Second Circuit in *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 110 (2nd Cir. 2009), "[a] trademark may be tarnished when it is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with plaintiff's unrelated goods."

The Mill does not allege that the Association's products are of shoddy quality or portray the PENDLETON Mark in an unwholesome or unsavory context.  Nor does the Complaint provide factual content that would support these allegations in any way.  To the contrary, the Mill alleges that it previously allowed the Association to use the PENDLETON Mark on apparel sold on the grounds of the Pendleton Round-Up Rodeo and in approved stores under a licensing agreement.  In light of the absence of factual allegations supporting the Mill's dilution by tarnishment claim, and the Mill's allowing the Association to sell apparel and products under the PENDLETON Mark for nearly fifteen years, the court finds the Mill has failed to state a claim for dilution by tarnishment.  Consequently, the Mill's Third Claim for Relief for federal trademark dilution is dismissed to the extent such claim relies on evidence of  tarnishment.

II. Fourth Claim for Relief – State Trademark Dilution under OR. REV. STAT. 647.107

The Association moves to dismiss the Mill's claim for relief under Oregon's trademark dilution statute arguing that the federal analysis for determining whether a mark is distinctive applies to the state law claims as well. The court agrees that the federal requirements for distinctiveness apply to claims brought under Oregon's trademark dilution statute. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998)(California state statute protects only strong and well-recognized marks so state and federal analysis is the same); *Fuel Clothing*, 2006 WL 3751237 at *5 (to prevail under Oregon trademark dilution statute, plaintiff must show it owns a distinctive mark); *Airwick Indus., Inc. v. Alpkem Corp.*, 384 F. Supp. 1027, 1032 (D. Or. 1974)(California and Oregon trademark dilution statutes are identical and require a distinctive mark). However, the court has found the Mill has adequately alleged that the PENDLETON Mark is sufficiently distinctive to merit protection under the federal trademark dilution statute. Accordingly, the court finds that the Mill has met this standard for the state trademark dilution claim as well. The Association's motion to dismiss the Mill's Fourth Claim for Relief for violation of the state trademark dilution state based on the absence of evidence of a distinctive mark is denied.

The Association also argues that even if the court does not dismiss the state trademark dilution claim in its entirety, it should dismiss the claim to the extent it relies on tarnishment allegations. The Oregon trademark dilution statutes does not distinguish between dilution by blurring and dilution by tarnishment. Rather, the statute protects only against the likelihood of dilution in general. The Mill alleges in the Fourth Claim for Relief that the Association "has diluted the distinctive quality of the PENDLETON marks, causing irreparable harm to [the Mill's] goodwill and business reputation." (Compl. ¶ 44). Based on the allegations in the Complaint, the Mill is not

relying on evidence of tarnishment in support of the state trademark dilution claim. Accordingly, the court need not dismiss any portion of the claim for failure to adequately allege factual support for dilution based on tarnishment.

III.    Sixth Claim for Relief – State Unfair and Deceptive Trade Practices Act

In support of the  Sixth Claim for Relief for violation of the Act, the Mill alleges that:

[The Association's] unauthorized use of the PENDLETON Marks have caused and are likely to continue to cause [the Mill] ascertainable loss.

[The Association] has been and is intentionally and willfully passing off its goods as those of [the Mill], causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of [the Association's] goods, causing a likelihood of confusion as to [the Association's] affiliation, connection, or association with [the Mill], and/or otherwise damaging the public.

[The Association's] unauthorized use of confusingly similar imitations of the PENDLETON Marks has caused and is likely to cause substantial injury to the public and to [the Mill], and [the Mill] is entitled to injunctive relief and to recover damages, costs, and reasonable attorneys' fees.

(Compl. ¶¶51-53). The Association moves to dismiss this claim based on case law from this district finding that the Act is a consumer protection statute which provides a cause of action for consumers only. *See CollegeNET, Inc. v. Embark.com*, 230 F. Supp. 2d 1167 (D. Or. 2000)(plaintiff did not allege it was a consumer of defendant and thus, lacked standing to maintain claims under the Act); *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1180 (D. Or. 1998), *aff'd* 185 F.3d 957 (9th Cir. 1999)("[p]laintiffs have not alleged that they are consumers of defendants' products and thus, I find that they lack standing to maintain claims under the Oregon UTPA"). The Association argues that because the Mill is not a consumer, the Mill has no right assert a claim under the Act. The Mill characterizes the issue of competitor/consumer standing under the Act as unresolved and argues that because the cases relied on by the Association

did not involve trademark-related claims, they are inapposite and not applicable.

First, the court notes that while the Mill characterizes the law on this issue as unresolved, it has failed to present any case in which a court considered the argument and held that a competitor as well as a consumer may pursue an action under the Act.  The cases cited by the Mill hold only that the analysis for a federal trademark infringement claim and an unfair competition claim under the Act are the same and the "gravamen of both is 'whether the [plaintiff] has created a "likelihood of confusion."'" *Adidas America, Inc. v. Calmese*, 662 F. Supp. 2d 1294, 1304 (D. Or. 2009)(quoting *Shakey's Inc. v. Covalt*, 704 F.2d 426, 431 (9th Cir. 1983), and citing *Starbucks Corp. v. Lundberg*, No 02-CV-948-HA, 2005 WL 3183858, at *13 (D. Or. Nov. 29, 2005)).  However, none of these cases addressed the question of whether a competitor had standing to bring a claim under the Act. In *Calmese*, the judge found that regardless of "whether Defendant has standing as a consumer of Plaintiff's products to bring a Counterclaim," the defendant failed to state a claim for unfair competition under the Act.  662 F. Supp. 2d at 1304.  In *Starbucks*, the court stated, without addressing the issue of standing, that because the plaintiff had met its burden of proof on the federal trademark infringement claim, it had also done so on its claims under Oregon's unfair competition statute.  2005 WL 3183858, at *13.    Similarly, in *Shakey's*, the court analyzed the issue of "likelihood of confusion" for both a federal trademark infringement claim and a state unfair competition claim under federal standards but did not consider the issue of whether a competitor may pursue a claim under the Act.  These cases do not provide support for the Mill's assertion that these cases are at odds with those that specifically addressed the issue and found that only consumers have standing to bring claims under the Act.

Next, the Mill argues that the cases cited by the Association are based on sections not relied

on by the Mill, specifically OR. REV. STAT. 646.608(1)(a), (c), and (e).  It is unclear under which

sections of OR. REV. STAT. 646.608 the plaintiffs were proceeding in *CollegeNET* and *Philip*

*Morris*.  However, in considering whether the statute was intended to protect only consumers, the

district court and the Ninth Circuit relied on either *Lund v. Arbonne Int'l, Inc.*, 132 Or. App. 87

(1994), or *Raudebaugh v. Action Pest Control, Inc.*, 59 Or. App. 166 (1982), both of which

addressed claims brought under OR. REV. STAT. 646.608(1)(e), a section relied on by the Mill.

In *Lund*, the parties to the action were in a franchisor/franchisee relationship.  The plaintiff

was a consultant for and sold the products of the defendant company.  *Lund*, 132 Or. App. at 89.  The

court addressed the defendant's argument that the Act was intended to regulate consumer, rather than

commercial or business transactions, in a footnote, recognizing that the legislative history of the Act

established that the intent of the Act was to protect the unwary consumer.  *Id*. at 93 n.7.  The court

relied on testimony of chief counsel of the Consumer Protection Division of the Attorney General's

office explaining the reason for expanding coverage of the Act to include franchises, distributorships,

and other similar business opportunities induced by fraudulent solicitations to become distributors:

> Now, again, the victims of these kinds of schemes are exactly the same kind of victim
> that the Act is concerned about but they're excluded from our protection simply
> because they were victimized into trying to become merchants rather than victimized
> into trying to buy something which they were going to use in their own house.

*Id*. (citation omitted).  The court in *Raudebaugh*, addressing an action brought by a homeowner

against a inspector who falsely represented that the residence she was purchasing was free of insect

infestations and related damage, did not specifically address the issue of whether a competitor had

standing under the Act but did note that "[t]he general policy of the [Act] is to discourage deceptive

trade practices and to provide a viable remedy for consumers who are damaged by such conduct."

*Raudebaugh*, 59 Or. App. 166, 169-171.  Clearly, the courts in these cases addressed at least one of the sections relied on by the Mill and still considered standing under the Act to be limited to consumers.

Additionally, in *CollegeNET*, the district court relied on a footnote in *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85 (1977), in which the state court specifically referenced the language of OR. REV. STAT. 646.608(1)(a)-(j), and noted it mirrors the Uniform Deceptive Trade Practices Act intended to identify businesses engaging in unfair competition with other businesses.  The court then analyzed the legislative history of these provisions of the Act:

> [t]he legislative history of the Oregon Unlawful Trade Practices Act supports the view that it is to be interpreted liberally as a protection to consumers.  House Bill 3037, the final version of the legislation, combined several bills introduced for consumer protection.  Senate Bill 50 (one of the consumer protection bill introduced in the 1971 legislative session) contained much of the language eventually enacted as ORS 646.608(1)(a)-(j).  As originally drafted, the bill described the proscribed trade practices as "unfair methods of competition."
>
> However, this language was deleted from the final version.  The minutes of the Senate Consumer Affairs Committee for February 17, 1971, read: Senator Willner then proceeded to explain his amendments to the committee, giving the rations behind the amendments as he progressed."
>
> "In section 3, he pointed out, the language 'unfair methods of competition' had been deleted, since the bill seeks to protect consumers rather than businesses."

*Denson*, 279 Or. at 90 n.4.  The Oregon Supreme court treated sections (a) through (j) of OR. REV. STAT. 646.608(1) similarly and found that they were all "intended to protect consumers rather than businesses."  Accordingly, the Oregon courts and this court, by relying on those state court cases, have clearly held that the sections of OR. REV. STAT. 646.608(1) on which the Mill is proceeding are intended to protect only consumers.

The Mill also argues that the plain meaning of the term "person" as found in the Act, and

Page 19 - OPINION AND ORDER                                              *{SIB}*

legislative history of the Act, both support a conclusion that competitors have standing under the Act.  This district addressed similar arguments in *CollegeNET*, found the word "person" as used in the Act to be ambiguous, and considered the legislative history of the Act before concluding, "with little difficulty . . . that the [Act] provides a cause of action only for consumers."  *CollegeNET*, 230 F. Supp. 2d. at 1174.  *See also L&A Designs v. Xtreme ATV's, Inc.*, No. 03:10-CV-627-HZ, 2012 WL 15382417 (D. Or. April 3, 2012)("Magistrate Judge Stewart delved carefully into the legislative history of the UTPA and concluded that the UTPA is limited to consumer actions.").  This court adopts the reasoning of Judge Stewart in *CollegeNET* and rejects the Mill's arguments with regard to statutory construction and legislative history.

Finally, the Mill argues that limiting standing under the subsections relied on by the Mill necessarily implements an "actual confusion" standard.   The Act provides that:

> any person who suffers any ascertainable loss of money or property, real or personal, as a result of willful use or employment by another person of a methods, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater.

OR. REV. STAT. 646.638(1).   The Mill notes that the language of this section, requiring an ascertainable loss as a result of a violation of the Act, is at odds with OR. REV. STAT. 646.608(1)(c), which identifies conduct resulting in a "likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another".   The Mill contends that the only way for a consumer to suffer "ascertainable loss" is to purchase a product in a mistaken belief that it comes from a different source but when a consumer purchases a product unaware they are being duped, only the competitor suffers the loss.   It appears that this is a distinction without a difference because for any ascertainable loss to occur, a consumer has to make a purchase of a

Page 20 - OPINION AND ORDER                                          *{SIB}*

product they did not intend to purchase.  In any event, even if the sections of the Act are at odds, the Oregon legislature, not the courts, must be the branch to remedy the inconsistency.

In the absence of a change in circumstance or evidence of clear error, this court declines the opportunity to second guess previous rulings by the Oregon state courts, this court, and the Ninth Circuit which clearly, and consistently, hold that the Act, and specifically the violations set forth in OR. REV. STAT. 646.608, are intended to protect only consumers.  The Mill, who has not, and can not, allege that it is a consumer of the Association is unable to assert a claim under the Act.  The Association is entitled to the dismissal of the Mill's Sixth Claim for Relief for violation of the Act.

*Conclusion*

The Association's motion to dismiss is GRANTED with regard to the federal trademark dilution claim based on tarnishment asserted in the Third Claim for Relief without prejudice and the claim for violation of the Act found in the Sixth Claim for Relief with prejudice.  The Association's motion to dismiss is DENIED in all other respects.  The Association shall file an answer to the Complaint within twenty days of the entry of this Opinion.  The Mill is granted leave to file an amended complaint alleging specific facts supporting the dilution by tarnishment claim, as well as any other amendments to the Complaint, no later than forty-five (45) days before the close of discovery.

DATED this 9th day of July, 2012.


                                        /s/ John V. Acosta
                                        JOHN V. ACOSTA
                                    United States Magistrate Judge


Page 21 - OPINION AND ORDER                                        *{SIB}*